**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESLIE VIDAL, | |
| Plaintiff, | |
| v. | Civil Action No. 23-1845 (MAS) (JBD) |
| GALAXY 2439 ENTERPRISES, LLC & | **MEMORANDUM OPINION** |
| GENESIS BIOTECHNOLOGY GROUP, LLC, | |
| Defendants. | |

**SHIPP, District Judge**

This matter comes before the Court upon the Motion to Dismiss Plaintiff Leslie Vidal's ("Plaintiff") Complaint (ECF No. 1), jointly filed by Defendants Galaxy 2439 Enterprises, LLC ("Galaxy") and Genesis Biotechnology Group, LLC ("Genesis") (hereinafter collectively "Defendants"). (ECF No. 5). Plaintiff opposed the Motion (ECF No. 8), and Defendants replied (ECF No. 9). The Court has considered the parties' written submissions and decides the Motion without oral argument, pursuant to Local Civil Rule 78.1. For the reasons set forth below, Counts One, Three, and Four against Genesis are dismissed with prejudice; Count Two against Defendants is dismissed with prejudice; and Counts One, Three, and Four against Galaxy are dismissed without prejudice.

I.      **BACKGROUND**

A.      **Statement of Facts**

On or about February 22, 2021, Defendants[1] hired Plaintiff as a part-time Human Resources Consultant to assist "Defendants in its [sic] review of current Human Resources practices, and assist with Defendants' launch of its [sic] new professional employer organization division, Professional Core Solutions." (Compl. ¶¶ 9-10, ECF No. 1.) Around May 2021, Defendants promoted Plaintiff to a full-time "Human Resources & Business Development Manager." (*Id.* ¶¶ 12-13.)

Plaintiff alleges that, throughout her employment, she "continuously raised concerns, objections, and complaints to her supervisors regarding . . . Defendants' unlawful, discriminatory employment practices." (*Id.* ¶ 14.) Plaintiff asserts that she raised, disclosed, and reported the following concerns to employees in Defendants' Human Resources Department: (1) failure to

---

[1] "Defendants Galaxy and Genesis . . . are a 'consortium of vertically integrated corporate research entities.'" (N.J. Super. Ct. Compl. ¶ 3, ECF No. 5-2, Ex. B.) Neither party distinguishes Galaxy and Genesis in its pleadings and assert that all facts are relevant to Defendants collectively.

follow standardized hiring procedures[2]; (2) improper payment of hourly employees[3]; and (3) inconsistencies in employee discipline and performance processes, such as that "female employees and employees in racially protected classes were severely disciplined for infractions or performance concerns and white employees were not severely disciplined, if at all." (*Id.* ¶¶ 15, 18, 20.) Despite such reports, Plaintiff states that Defendants did not take any action to address the improper behavior. (*Id.* ¶¶ 16-17, 19, 20-21.)

On or about June 28, 2021, Defendants had a job fair to recruit employees for various positions; Plaintiff, as the Human Resources and Business Development Manager, "was tasked with . . . attempting to match each candidate with an open position." (*Id.* ¶¶ 23-24.) Based on an executive's (the "Executive") request "that Plaintiff direct all candidates [with hospitality experience] to her job station first," Plaintiff "directed [to the Executive] a Black male job fair attendee . . . who indicated that he had experience in the hospitality industry." (*Id.* ¶¶ 25-26.) Plaintiff asserts that as she approached the Executive with the Black job fair attendee, the Executive "began to make a shooing gesture toward Plaintiff stating '[n]o, I am not going to

---

[2] Plaintiff alleges that:

> Defendants' hiring practices were not following standardized procedures with regard to the interviewing and hiring of candidates, such as Defendants' recruitment team completing and placing signatures on employment applications rather than the applicant doing so, employment applications lacking necessary disclosures, Human Resources representatives conducting unauthorized background checks, and candidates who disclosed medical and/or health conditions or need for reasonable accommodation were being declined employment.

(*Id.* ¶ 15.)

[3] Plaintiff asserts that "Defendants' payroll system was automated to pay hourly employees based on their scheduled hours rather than their actual hours worked," which resulted in "certain non-exempt employees . . . not being paid overtime wages" despite working more than forty hours per week. (*Id.* ¶ 18.)

interview him,' or words to that effect." (*Id.* ¶ 27.) Plaintiff states that she informed several employees about the Executive's conduct, which "she believed . . . constituted discrimination." (*Id.* ¶ 28.) In turn, Plaintiff alleges that a Human Resources Generalist "informed Plaintiff that [the Executive] had exhibited racially discriminatory behavior in the past." (*Id.* ¶ 29.)

The next day, Plaintiff had a phone call with Defendants' Human Resources team wherein the team members discussed how they were "pleased with the outcome of the job fair and had deemed it a success." (*Id.* ¶ 30.) Later that day, Plaintiff alleges that the Black job fair attendee called and stated that "he believed that [the Executive] refused to interview him . . . because he is Black." (*Id.* ¶¶ 31-32.) Plaintiff then informed Defendants' Senior Human Resources Manager and Human Resources Director of the Executive's supposedly discriminatory conduct at the job fair and the job fair attendee's complaint. (*Id.* ¶ 33.) Plaintiff alleges that the Senior Human Resources Manager responded that the Executive "previously exhibited discriminatory behavior in Defendants' workplace," and "that [the Executive] is not an 'HR expert.'" (*Id.* ¶ 34.) Plaintiff further states that the Senior Human Resources Manager "refused to commit to conducting an investigation," because "the matter 'was quite sensitive' due to [the Executive's] position within the company, and her romantic relationship with [the CEO]."[4] (*Id.* ¶ 36.)

On June 30, 2021, Defendants' Human Resources Director and Chief Legal Officer held a meeting with Plaintiff. (*Id.* ¶ 38.) Plaintiff states that she reiterated the alleged discriminatory conduct she observed, including the Executive's conduct at the job fair and Defendants' hiring, payroll, and disciplinary practices. (*Id.* at ¶¶ 39-40.) Plaintiff alleges the Human Resources Director and Chief Legal Officer "instructed [her] to keep the substance of her complaints and the

---

[4] Plaintiff alleges that the Executive is romantically involved with Defendants' CEO based on a Human Resources employee's statement that "[the Executive] is practically married to [the CEO]." (*Id.* ¶ 29.)

4

meeting confidential." (*Id.* ¶¶ 39-41.) Plaintiff asserts that, at the end of that same day, Defendants terminated her "for 'poor performance,' for 'not meeting goals set for the job fair,' and finally because the discrimination concerns raised by Plaintiff were investigated and 'did not line up.'" (*Id.* ¶ 42.) Plaintiff states that she had "not been told previously that there were any issues with her job performance." (*Id.* ¶ 43.)

### B.   Procedural History

This is not the first time Plaintiff has litigated the circumstances leading to her termination. On June 24, 2022, Plaintiff filed a complaint in New Jersey Superior Court against Defendants, along with their CEO, Human Resources Director, and Senior Human Resources Manager. (*See generally* N.J. Super. Ct. Compl., ECF No. 5-2, Ex. B.) The state complaint pled essentially the same facts as Plaintiff pleads in this case—Plaintiff claimed that she was terminated after complaining to Defendants' Human Resources Department about supposed unlawful practices in hiring, payroll, and discipline, as well as at the job fair incident. (*Compare* Compl. ¶¶ 9-46 *with* N.J. Super. Ct. Compl. ¶¶ 21-32.) Plaintiff asserted three counts in her state court complaint: (1) retaliation under the Conscientious Employee Protection Act ("CEPA"); (2) retaliation under the New Jersey Law Against Discrimination ("NJLAD"); and (3) associational discrimination and wrongful discharge under the NJLAD. (*See generally* N.J. Super. Ct. Compl.)

On October 27, 2022, the state court entered a consent order dismissing with prejudice Count Three of Plaintiff's complaint. (Oct. 27, 2022 N.J. Super. Ct. Consent Order, ECF No. 5-2, Ex. C.) The state court also dismissed with prejudice Plaintiff's complaint in its entirety as to Genesis, its CEO, and its Senior Human Resources Manager. (*Id.*) The state court reserved decision on whether Plaintiff stated a claim for retaliation under CEPA or the NJLAD against Galaxy and its Human Resources Director. (*Id.* at 46.)

On December 12, 2022, the state court dismissed Counts One and Two of Plaintiff's state law complaint against Galaxy and its Human Resources Director without prejudice. (Dec. 12, 2022 N.J. Super. Ct. Order, ECF No. 5-2, Ex. C.) The court found Plaintiff's CEPA claim failed because "[her] references to unspecified employment practices [were] insufficient to support the assertion that [she] had a reasonable belief that any law was being violated." (*Id.* at 49.) The state court found Plaintiff's NJLAD claim also failed because "[her] allegations [were] not enough to support [her] conclusion that the executive refused to interview the [j]ob [f]air [a]ttendee because he was Black." (*Id.* at 50.)

On April 4, 2023, Plaintiff filed a complaint in this Court. (ECF No. 1.) Defendants moved to dismiss Plaintiff's complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] (ECF No. 5.) Plaintiff opposed (ECF No. 8), and Defendants replied (ECF No. 9).

## II.     LEGAL STANDARD

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify and accept as true, all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly v. Bell Atl. Corp.*, 550 U.S. 544, 555 (2007)). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint

---

[5] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211

(quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556

U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim

has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr*

*Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

Plaintiff asserts four Counts against Defendants: (1) retaliation under 42 U.S.C. § 1981;

(2) violation of CEPA; (3) wrongful termination in violation of New Jersey public policy pursuant

to *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505 (1980); and (4) violation of the NJLAD.

(*See* Compl. ¶¶ 47-79.) Each claim stems from Plaintiff's allegation that Defendants fired her

because she "made complaints about unlawful human resources practices and racial discrimination

in the workplace." (*See* Compl. ¶¶ 48, 60, 66, 72.)

### A.    **Claim Preclusion**

#### i.    *Claims Against Genesis*

The Court first addresses the question of whether the previous dismissal of Plaintiff's

claims in state court has preclusive effect in this proceeding. *See Giordano v. Saxon Mortg. Servs.,*

*Inc.*, No. 12-7937, 2013 WL 12158378, at *5 (D.N.J. Oct. 31, 2013) ("Judicial estoppel is a

fact-specific, equitable doctrine, applied at courts' discretion." (citing *New Hampshire v. Maine*,

532 U.S. 742, 749 (2001)). Pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, federal

courts must "give preclusive effect to state-court judgments whenever the courts of the State from

which the judgments emerged would do so." *Allen v. McCurry*, 449 U.S. 90, 96 (1980) (citing 28

U.S.C. § 1738); *see also Adelphia Gateway, LLC v. Pa. Env't Hearing Bd.*, 62 F.4th 819, 825 (3d

Cir. 2023). Federal courts must "look to the law of the adjudicating state" to determine whether a prior state court judgment has preclusive effect. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357 (3d Cir. 1999). In New Jersey, the claim preclusion doctrine gives preclusive effect "to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding." *Bd. of Trs. of Trucking Emps. of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992). In other words, claim preclusion bars consideration of any claims a plaintiff actually brought or "could have asserted in the previous lawsuit." *Beasley v. Howard*, 14 F.4th 226, 231-32 (3d Cir. 2021).

Claim preclusion requires: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same causes of action." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984); *Pittman v. La Fontaine*, 756 F. Supp. 834, 841 (D.N.J. 1991) ("To invoke preclusion, it is required that the subsequent action must involve substantially similar or identical causes of action, issues, parties and relief as were involved in the prior action.").

First, here, there was a final judgment on the merits in which the state court dismissed all claims against Genesis *with prejudice*. (N.J. Super. Ct. Consent Order 45-46.) *See Dowdell v. Univ. of Med. & Dentistry*, 94 F. Supp. 2d 527, 533 (D.N.J. 2000) (finding that under New Jersey law, "*dismissal with prejudice* 'constitutes an adjudication on the merits as fully and completely as if the order had been entered after a trial.'" (quoting *Feinsod v. Noon*, 617 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1992))). Second, Genesis was a defendant in the state suit and is also a defendant in the instant action. *Id.* at 536 n.10 (finding the second factor satisfied when "[b]oth parties in the present action were engaged in the state suit."). Third, Plaintiff's current suit against

Genesis is based on the same causes of action as her previous state action. To find two causes of action the same, a court must analyze:

> (1) whether the wrong for which redress is sought is the same in both actions (that is, whether the acts complained of and the demand for relief are the same)[;] (2) whether the theory of recovery is the same[;] (3) whether the witnesses and documents necessary at trial are the same[;] and (4) whether the material facts alleged are the same.

*Pittman*, 756 F. Supp. at 841 (citing *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 405 (N.J. 1989)). Plaintiff's Complaint in this action and her complaint in the state action both assert claims under the theory that Plaintiff was wrongfully terminated based on Defendants' retaliation, and both complaints seek relief through damages.[6] *See Dowdell*, 94 F. Supp. 2d at 540 (finding that the wrong for which redress is sought is the same in federal court as it was in state court when "termination and its surrounding events served as the basis for both [plaintiff's] state and federal complaints"). Plaintiff pleads the same material facts as she did in her dismissed state action, which would require the assessment of the same evidence and possible witnesses.[7] The Court, accordingly, finds that claims under CEPA and the NJLAD against Genesis, which were brought

---

[6] *Compare* Compl. ¶ 45 ("Defendants terminated Plaintiff in retaliation for her complaints of unlawful racial discrimination and the failure to pay overtime/payroll practices.") *with* N.J. Super. Ct. Compl. ¶ 125 ("[T]erminating [Plaintiff's] employment was . . . in retaliation for Plaintiff having opposed practices or acts[.]").

[7] Plaintiff cites the same core events—that Defendants allegedly engaged in improper recruiting and hiring practices (*compare* Compl. ¶¶ 14-17 *with* N.J. Super. Ct. Compl. ¶¶ 22-28), incorrectly paid its employees (*compare* Compl. ¶¶ 18-19 *with* N.J. Super. Ct. Compl. ¶¶ 29-36), disparately treated female and minority employees (*compare* Compl. ¶¶ 20-22 *with* N.J. Super. Ct. Compl. ¶¶ 37-41), and mistreated a potential job applicant based on his race (*compare* Compl. ¶¶ 23-37 *with* N.J. Super. Ct. Compl. ¶¶ 47-79).

in state court, must be dismissed.[8] *See id.* (precluding plaintiff's claim because the plaintiff "raise[d] claims predicated on events indistinguishable from those raised in his state complaint.").

Further, Plaintiff had the opportunity to plead her § 1981 and *Pierce* claims against Genesis in New Jersey state court, which had jurisdiction to hear all of Plaintiff's claims brought in this federal action, but failed to do so. *See Marina Bay Towers Urb. Renewal II, L.P. v. City of N. Wildwood*, No. 09-369, 2009 WL 2147356, at *3 (D.N.J. July 14, 2009) ("[C]ivil rights claims based on federal law can be brought and heard in state court." (citing *Tafflin v. Levitt*, 493 U.S. 455, 458-59 (1990))). Claim preclusion thus bars Plaintiff's remaining claims as to Genesis. *See In re Dex Media, Inc.*, 595 B.R. 19, 33 (D. Del. 2018) ("Claim preclusion 'bars not only claims that were brought in the previous action, but also claims that could have been brought.'" (quoting *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009))); *Dowdell*, 94 F. Supp. 2d at 540 ("The mere fact that [plaintiff] predicates his instant claims on Title VII, rather than the NJLAD, does not bar preclusion of these claims."); *Davis v. U.S. Steel Supply*, 688 F.2d 166, 175 (3d Cir. 1982) (precluding plaintiff's § 1981 claim because a nearly identical claim was brought in state court pursuant to a municipal antidiscrimination ordinance and dismissed with prejudice).

Finally, finding that the claims against Genesis are precluded does not violate any due process concerns. *See Pittman*, 756 F. Supp. at 845 ("[E]ven where . . . a prior decision meets a state's requirements for claim preclusion, the prior decision will not be given preclusive effect if due process was not provided by the state forum in which the claim was previously litigated."); *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 482 (1982) (finding that the state must satisfy

---

[8] To the extent Plaintiff asserts that her current CEPA claim includes a violation of "adverse treatment," which was not in her state law action, the Court's analysis would not change because such a claim *could have been brought* in Plaintiff's state law action. *See Chugh v. W. Inventory Servs., Inc.*, 333 F. Supp. 2d 285, 292 n.1 (D.N.J. 2004) ("The doctrine of claim preclusion will only bar a claim that *could have been* brought in a prior proceeding but was not.").

applicable requirements of the Due Process Clause, and that "other state and federal courts are not required to accord full faith and credit" if the state judgment is "constitutionally infirm"). Based on the record, the Court cannot find any due process violations or concerns arising out of the state action. (*See generally* Oct. 27, 2022 N.J. Super. Ct. Consent Order; Dec. 12, 2022 N.J. Super. Ct. Order.) Moreover, Plaintiff has not alleged that she did not have a full and fair opportunity to litigate in state court. *See Peduto v. City of N. Wildwood*, 878 F.2d 725, 726 (3d Cir. 1989) (finding that appellants were not denied due process of law in state court because they were afforded "a full and fair opportunity" and appellants never alleged otherwise). Nor did Plaintiff object to the state court dismissing all claims against Genesis with prejudice—in fact, she *consented* to that dismissal. (Oct. 27, 2022 N.J. Super. Ct. Consent Order 2.) *See Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 111 (3d Cir. 1988) (finding no due process violation where plaintiff did not object to dismissal of complaint, file an appeal, or move to reconsider).

The Court therefore dismisses Plaintiff's Complaint with prejudice in its entirety as to Genesis under the claim preclusion doctrine.

ii. *Claims Against Galaxy*

Claim preclusion does not bar Plaintiff's claims against Galaxy because the state court dismissed Plaintiff's claims against Galaxy *without* prejudice. (Dec. 12, 2022 N.J. Super. Ct. Order.) Dismissal without prejudice "is neither final nor appealable because the deficiency may

be corrected by the plaintiff without affecting the cause of action." *Borelli v. Reading*, 532 F.2d

950, 951 (3d Cir. 1976). The Court, accordingly, addresses each Count remaining against Galaxy.[9]

### B.    CEPA Claim Against Galaxy

Plaintiff asserts that she was wrongfully terminated by Defendants for engaging in a

protected activity. (Compl. ¶¶ 55-64.) Plaintiff alleges Defendants' retaliation and adverse

treatment of Plaintiff are in violation of CEPA. (*See id.*) Defendants counter that Plaintiff's CEPA

claim is barred by the statute of limitations. (Defs.' Moving Br., 14-18, ECF No. 5-1; Defs.' Reply

Br. 1-13, ECF No. 9.)

### i.    Statute of Limitations

Although a motion to dismiss is generally not the proper vehicle for asserting a time bar,

the Third Circuit permits a defendant to assert a statute of limitations defense via a motion to

dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been

brought within the statute of limitations." *Viney v. Jenkintown Sch. Dist.*, 51 F. Supp. 3d 553, 555

(E.D. Pa. 2014) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)); *Oshiver v. Levin,

Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (finding that an exception

exists "where the complaint facially shows noncompliance with the limitations period and the

affirmative defense clearly appears on the face of the pleading."). Defendants assert that that is the

case here, and Plaintiff does not allege that the dates set out in the Complaint are insufficient to

---

[9] The Court declines to discuss issue preclusion in this matter. Although issue preclusion may attach to an action previously dismissed without prejudice for failure to state a claim, the case law in this area is less than clear. *See ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 214 n.17 (3d Cir. 2004) (describing how "New Jersey case law explaining the preclusive effect of a dismissal for failure to state a claim is somewhat confusing."). Further, the Third Circuit "construe[s] ambiguities against claim preclusion. . . . because a dismissal with prejudice 'is a severe and disfavored remedy' that is 'only appropriate in limited circumstances.'" *Papera v. Pa. Quarried Bluestone Co.*, 948 F.3d 607, 611 (3d Cir. 2020) (quoting Third Circuit cases). The Court, accordingly, will review the claims against Galaxy on the merits.

examine the timeliness of her claims; instead, Plaintiff relies upon the equitable tolling doctrine to assert that her CEPA claim should not be dismissed. (Defs.' Moving Br. 17-18; Pl.'s Opp'n Br. 16, ECF No. 8-1.)

Plaintiff alleges in her Complaint that Defendants discharged her on June 30, 2021. (Compl. ¶ 42.) The parties do not dispute that the statute of limitations for a CEPA claim is one year. N.J.S.A. 34:19-5. (*See* Pl.'s Opp'n Br. 13-16; Defs.' Moving Br. 17-18.) When an employer wrongfully terminates an employee, the statute of limitations begins to run on the date of actual discharge. *See Farneski v. County of Hunterdon*, 916 F. Supp. 2d 573, 588 (D.N.J. 2013) (citing *Alderiso v. Med. Ctr. of Ocean Cnty., Inc.*, 167 N.J. 191 (N.J. 2001)); *Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 773 (D.N.J. 1998) (dismissing a CEPA claim brought two years after discharge). The one-year statute of limitations for Plaintiff's CEPA claim is thus June 30, 2022. *See* N.J.S.A. 34:19-5. Plaintiff timely filed a CEPA claim in New Jersey Superior Court on June 24, 2022, which the court dismissed without prejudice against Galaxy on December 12, 2022. (*See* N.J. Super. Ct. Compl.; Dec. 12, 2022 N.J. Super. Ct. Order.) On April 3, 2023, Plaintiff filed her Complaint in this Court, well after CEPA's one year statute of limitations expired. (*See* Compl.) The Court, therefore, can conclusively determine that the applicable one-year statute of limitations bars Plaintiff's claim and finds Defendants' statute of limitations defense at the motion to dismiss stage to be proper. Plaintiff's CEPA claim is thus barred unless the equitable tolling doctrine applies.

### ii.    Equitable Tolling

Equitable tolling allows a plaintiff to bring suit "after the statutory time period for filing a complaint has expired *if* [the plaintiff has] been prevented from filing in a timely manner due to sufficiently inequitable circumstances." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236,

240 (3d Cir. 1999) (emphasis added). These inequitable circumstances are "narrowly defined." *Fahey v. Hollywood Bicycle Ctr., Inc.*, No. 08-3573, 2009 WL 749856, at *4 (D.N.J. Mar. 18, 2009) (quoting *R.A.C. v. P.J.S., Jr.*, 927 A.2d 97, 107 (N.J. 2007)). Specifically, the Third Circuit has held that "equitable tolling may be appropriate[:] . . . (1) [if] the defendant has actively misled the plaintiff[;] (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting [her] rights[;] or (3) if the plaintiff has timely asserted [her] rights mistakenly in the wrong forum." *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998) (quoting *Kocian v. Getty Refin. & Mktg. Co.*, 707 F.2d 748, 753 (3d Cir. 1983)).

Plaintiff invokes the doctrine of equitable tolling to prevent her CEPA claim from being dismissed as time barred. (Pl.'s Opp'n Br. 13-16.) Plaintiff states that her claims in state court were "dismissed on procedural/pleading grounds," but were filed in this Court with additional federal civil rights claims. (Pl.'s Opp'n Br. 16.) Plaintiff does not assert that she was actively misled by Defendants, was prevented from asserting her rights in an extraordinary way, or timely asserted her rights in the wrong forum. Instead, Plaintiff argues equitable tolling should apply because she timely filed her CEPA claim in state court without "sle[eping] on her rights." (*Id.*)

Plaintiff fails to allege a valid basis for equitable tolling on her CEPA claim. As noted, Plaintiff has not alleged any inequitable circumstances or improper conduct by Defendants in the state action or the instant case. *See Midgley*, 142 F.3d at 179 ("Absent a showing of intentional inducement or trickery by the defendant, a statute of limitations should be tolled only in the 'rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'" (quoting *Alvarez-Machain v. United States*, 96 F.3d 1246, 1251 (9th Cir. 1996))). The state court dismissed Plaintiff's CEPA claim for failure to state a claim, not for any technical errors involving jurisdiction or venue. *See Schmidt v. Celgene Corp.*, 42 A.3d 892, 900 (N.J. Super. Ct.

App. Div. 2012) (finding that "the primary purpose of these equitable doctrines—avoiding a technical defeat of a meritorious claim on which the doors of the courthouse have been shut—was not implicated" because plaintiff's initial CEPA claim was dismissed on the merits rather than on jurisdictional grounds); *but see Galligan v. Westfield Ctr. Serv., Inc.*, 412 A.2d 122 (N.J. 1980) (granting equitable tolling to plaintiff's claim that was misfiled and dismissed for lack of subject matter jurisdiction in federal court). It was Plaintiff who chose to commence litigation in state court only six days before CEPA's statute of limitations ran. *See Gonzalez v. Portfolio Recovery Assocs., LLC*, No. 13-1350, 2013 WL 5334075, at *3 (D.N.J. Sept. 20, 2013) (declining to apply equitable tolling because "[plaintiff] chose to file his first complaint just two months before the statute of limitations ran . . . . That the statute of limitations ran while the state-court motion to dismiss was pending cannot be blamed on [d]efendant; [d]efendant did nothing to mislead [p]laintiff or prevent [p]laintiff from exercising his rights."). Plaintiff's mere assertion that Defendants received timely notice of the potential claim is insufficient to overcome the hurdles for equitable tolling to apply. *See Midgley*, 142 F.3d at 179 ("Federal courts invoke the doctrine of equitable tolling 'only sparingly.'" (citations omitted)). The Court, accordingly, dismisses Plaintiff's CEPA claim against Galaxy with prejudice.

### C.    42 U.S.C. § 1981 Claim Against Galaxy[10]

Count One of Plaintiff's Complaint asserts a retaliation claim under 42 U.S.C. § 1981 based on her termination after she raised complaints regarding "unlawful human resources practices and racial discrimination in the workplace." (Compl. ¶ 48.) Specifically, Plaintiff alleges she engaged in protected conduct when she made separate complaints to Defendants regarding their: (1) engagement in disparate disciplinary treatment towards women and minority employees; and (2) discriminatory refusal to hire a Black job applicant. (*See id.* ¶¶ 47-54; Pl.'s Opp'n Br. 9-10.)

"The Supreme Court has established that § 1981 protects individuals against retaliation." *Curry v. Devereux Found.*, 541 F. Supp. 3d 555, 559 (E.D. Pa. 2021) (citing *CBOCS*, 553 U.S. at 451). 42 U.S.C. § 1981 further prohibits retaliation against individuals who help others "suffering direct racial discrimination." *CBOCS*, 553 U.S. at 452.

To maintain a *prima facie* § 1981 retaliation claim, Plaintiff must adequately allege that: (1) she engaged in a protected activity; (2) she suffered an adverse employment action by Defendants, her employer; and (3) a causal connection exists between the protected activity and

---

[10] In parts of her submissions, Plaintiff conflates a claim under 42 U.S.C. § 1981 with a claim under Title VII, and seems to assume that they are the same. (*See* Compl. ¶¶ 4, 21; Pl.'s Opp'n Br. 4.) Indeed, although "the Third Circuit treats § 1981 and Title VII claims similarly," the two causes of action are distinct. *See Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749, 754 (E.D. Pa. 2014); *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 455 (2008) ("[R]emedies available under Title VII and under § 1981, although related, and although directed to most of the same ends, are separate, distinct, and independent." (quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 461 (1975))). This Court notes that the several mere references to Title VII in Plaintiff's submissions are primarily in section heads, and that Plaintiff otherwise cites and analyzes the legal standard only for 42 U.S.C. § 1981. (Compl. 9; Pl.'s Opp'n Br. 8-11.) For example, Plaintiff states in her Opposition Brief that "the Plaintiff has pled a claim for retaliation under § 1981." (Pl.'s Opp'n Br. 9.) This Court therefore reviews Plaintiff's pleadings to assert only a 42 U.S.C. § 1981 claim. To the extent Plaintiff asserts that she meant to plead a claim under Title VII, she fails to meet the pleading standard. *See Iqbal*, 556 U.S. at 687 ("Rule 8 does not empower [a party] to plead the bare elements of his cause of action, affix the label "general allegation," and expect his complaint to survive a motion to dismiss.").

the adverse employment action. *See Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (citation omitted). The Third Circuit then utilizes a burden-shifting framework: if the plaintiff succeeds in establishing a *prima facie* case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory [or nonretaliatory] reason for the employee's rejection[;]" if the defendant successfully carries this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for retaliation. *See Jarmon v. Trader Joe's Co.*, No. 21-3889, 2023 WL 2402874, at *3 (E.D. Pa. Mar. 8, 2023) (first alteration in original) (quoting *Shaner v. Synthes*, 204 F.3d 494, 500-01 (3d Cir. 2000)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (finding that the *McDonnell Douglas* evidentiary standard does not apply if a plaintiff is able to produce direct evidence of employment discrimination) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985)).

Importantly, "[t]he Supreme Court has held that in employment discrimination cases, a plaintiff is not required to establish a *prima facie* case at the pleadings stage." *Kelly v. HD Supply Holdings, Inc.*, No. 14-372, 2014 WL 5512251, at *3 (D.N.J. Oct. 31, 2014). "Instead, plaintiff's claim must be facially plausible and give fair notice to the defendants of the basis of the claim." *Id.* at 4 (citing *Huggard v. Crown Bank*, No. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb.17, 2012)). "[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the *required* element . . . The complaint must state enough facts to raise a reasonable expectation that discovery will reveal evidence of the *necessary* element." *Id.* (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321-22 (3d Cir. 2008) (emphasis in original)).

"In a retaliation case[,] a plaintiff must demonstrate that there had been an underlying § 1981 violation." *Castleberry v. STI Grp.*, 863 F.3d 259, 267 (3d Cir. 2017) (quoting *Est. of Oliva*,

604 F.3d at 798) (noting that a plaintiff must have "acted under a good faith, reasonable belief that [an underlying § 1981] violation existed." (quoting *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015))).[11] The Court, therefore, first considers whether Plaintiff adequately alleges that there is an underlying § 1981 violation. *See id.* For the two events at issue, Plaintiff appears to allege that § 1981's guarantee that all persons are entitled to the same "full and equal benefit" of the law was violated because Galaxy, an employer, discriminated and disparately treated employees and a job applicant differently based on race and/or sex. (*See* Compl. ¶ 21.) *See also* 42 U.S.C. § 1981(a); *Est. of Oliva*, 604 F.3d at 798.

### i.    *Disparate Treatment*

Plaintiff alleges that "while reviewing Defendants' Human Resources practices, [she] identified inconsistencies in the employee discipline and performance processes; specifically, Plaintiff's review identified that female employees and employees in racially protected classes were severely disciplined for infractions or performance concerns and white employees were not severely disciplined, if at all." (Compl. ¶ 20.) Plaintiff states that she "reasonably believed that Defendants' practices of disparate treatment towards employees based [on] sex and/or race were unlawful" and reported them to Defendants' Human Resources Department. (*Id.* ¶¶ 21, 22). Defendants argue that Plaintiff "fails to plead any facts supporting the reasonableness of [the] allegation, including who these employees were, what positions they held, what they were disciplined for, and how exactly they were treated disparately." (Defs.' Moving Br. 11-12; *see also* Defs.' Reply 13-14.)

---

[11] The Third Circuit is unique in that it is "the only circuit court that requires plaintiffs to demonstrate an underlying § 1981 violation[,]" although case law is not clear as to what is exactly required. *Lara v. Samuel Adams Pa. Brewing Co., LLC*, No. 20-0498, 2020 WL 5211206, at *9 n.24 (E.D. Pa. Sept. 1, 2020) (citing *Anderson v. Boeing Co.*, No. 15-3073, 2016 WL 9446648, at *23 (E.D. Pa. Aug. 30, 2016)).

As previously set forth, "a plaintiff establishes a [§ 1981] retaliation claim if she shows that she had a reasonable belief that her employer was engaged in an unlawful employment practice and that the employer retaliated against her for protesting against that practice." *Curry*, 541 F. Supp. 3d at 560 (quoting *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 865 (3d Cir. 1990)). Yet, a "§ 1981 cause of action in the employment context which is based on racial discrimination must set forth facts to establish that the allegedly disparate treatment was the result of 'intentional' or 'purposeful' discrimination." *Hicks v. Arthur*, 843 F. Supp. 949, 954 (E.D. Pa. 1994) (quoting *Weldon v. Kraft*, 896 F.2d 793, 796 (3d Cir. 1990)); *see also Brown v. Joel Tanis & Sons, Inc.*, No. 13-02984, 2016 WL 3951378, at *4 (D.N.J. July 21, 2016). "A § 1981 plaintiff cannot satisfy the 'purposeful' criterion with 'vague and conclusory allegations' in the complaint." *Id.* (citing *Armstrong v. Sch. Dist. of Phila.*, 597 F. Supp. 1309, 1312 (E.D. Pa. 1984).

With Plaintiff's allegations accepted as true, this Court finds that Plaintiff has not pled sufficient facts to survive the motion to dismiss. Plaintiff fails to provide any facts from her review of Defendants' Human Resources practices that suggest *intentional or purposeful* discrimination. For example, despite stating that she "identified" such concerns through her review, Plaintiff fails to list any inconsistencies in the employee discipline and performance process, the number of employees who were treated disparately, or what infractions or performance concerns were addressed with the disparately treated employees. *See Lara*, 2020 WL 5211206, at *9 (denying a motion to dismiss in part because the plaintiff cited specific interactions and comments made by defendants, which suggested a plausible claim for disparate treatment based on race-based discrimination and retaliation); *Warrick v. N.J. Off. of Att'y Gen.*, No. 20-14274, 2022 WL 1763855, at *5 (D.N.J. May 31, 2022) (finding that the plaintiff pled sufficient facts for a disparate treatment claim because the amended complaint alleged "numerous examples of, for instance,

[d]efendants promoting white colleagues within four years and promoting African American employees within twenty-one years"). Here, Plaintiff's pleadings amount only to vague and conclusory allegations that fail to raise a reasonable expectation that discovery will reveal evidence of a necessary element.

> ii.      The Executive's Conduct

Plaintiff next alleges that the Executive's refusal to interview a job applicant constitutes illegal discriminatory conduct because Plaintiff reasonably believes the Executive based her decision on racial discrimination. (Compl. ¶¶ 25-35.) Defendants again state that Plaintiff "fails to plead sufficient facts to establish an underlying violation." (Defs.' Moving Br. 13; *see also* Defs.' Reply Br. 14.)

To establish a discrimination claim under § 1981, "a plaintiff must show (1) that he [or she] belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Castleberry*, 863 F.3d at 266 (citing *Est. of Oliva*, 604 F.3d at 797).

The Court, accepting all reasonable inferences as true, does not identify any factual support to suggest or satisfy the second prong—that the Executive refused to interview the job applicant because he was Black. (*See* Compl. ¶¶ 25-34.) Plaintiff relies only upon her and the job applicant's belief that the Executive declined to interview the Black job applicant because of his race. (*Id.* ¶ 28.) Without more factual detail, Plaintiff fails to adequately allege an underlying § 1981 violation.[12] "[S]uch allegations are conclusory since [Plaintiff] fails to allege facts to show that

---

[12] Plaintiff makes the same allegations here as she did for her NJLAD claim in state court, which the state court dismissed. (Dec. 12, 2022 N.J. Super. Ct. Order 4 (dismissing Plaintiff's NJLAD claim because "[her] allegations are not enough to support [her] conclusion that the executive refused to interview the [j]ob [f]air [a]ttendee because he was Black.")).

[the Executive's] actions were somehow connected to any protected category, let alone [to the job applicant's] race." *Mudie v. Phila. Coll. of Osteopathic Med.*, 577 F. Supp. 3d 375, 381 (E.D. Pa. 2021) (finding that plaintiff's allegations that are "race-related are bald legal conclusions and lack factual support" because "[plaintiff] fail[ed] to provide facts to show that [d]efendants' actions were related to her race, as opposed to some other reason or due to a personality conflict); *Curry*, 541 F. Supp. 3d at 562 (finding that an *employee's direct comments* such as "angry Black woman" was enough to allow discovery); *Savage v. Temple Univ. - of Commonwealth Sys. of Higher Educ.*, No. 19-6026, 2020 WL 3469039, at *6 (E.D. Pa. June 25, 2020) (finding that plaintiff made "legal conclusions, not factual allegations," which are not "consider[ed] . . . in deciding a motion to dismiss[,]" because plaintiff "pled that he was terminated [and discriminated against] because of his race."); *Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 137 (E.D. Pa. 2020) (finding that plaintiff's allegations failed to state enough facts to raise a reasonable expectation that discovery would reveal evidence of discriminatory intent, despite plaintiff's allegation that a racial comment was made at her).

The Court finds that Plaintiff fails to state a claim for retaliation because she has not adequately alleged that there was an underlying § 1981 violation of sex and/or race discrimination, even under the more deferential pleading standard applicable to discrimination claims. *See*

*Castleberry*, 863 F.3d at 267; *Triangle Doughnuts*, 472 F. Supp. 3d at 136. The Court, accordingly, dismisses Plaintiff's § 1981 claim against Galaxy without prejudice.[13]

### D.   NJLAD Claim Against Galaxy

Under Count Four, Plaintiff asserts that "Defendants' decision to terminate Plaintiff's employment is a retaliatory action and constitutes a violation of the [NJLAD]." (Compl. ¶ 76.) In short, Plaintiff alleges a claim of retaliation under the NJLAD against Galaxy.

The NJLAD makes it illegal for an employer to terminate an employee on the basis of race, national origin, sex and other protected characteristics. *Victoria v. Fluor Enters., Inc.*, No. 13-7587, 2015 WL 5822056, at *6 (D.N.J. Oct. 2, 2015) (citing N.J.S.A. 10:5-12). The factors to establish a *prima facie* case of retaliation under the NJLAD are the same as those required under § 1981. *Mann v. Prince Telecom, LLC*, No. 12-6263, 2013 WL 3884189, at *5 (D.N.J. July 26, 2013). The analysis for Plaintiff's NJLAD claim against Galaxy is, thus, also the same. *See Venson v. Pro Custom Solar, LLC*, No. 19-19227, 2021 WL 4963294, at *3 (D.N.J. Oct. 25, 2021) (finding plaintiffs failed to articulate a claim of retaliation under § 1981, and thus "their claims of retaliation under the NJLAD are also futile.") This Court, accordingly, adopts the analysis previously provided for Plaintiff's § 1981 claim and dismisses Plaintiff's NJLAD claim without prejudice.

### E.   *Pierce* Claim Against Galaxy

Plaintiff's Complaint asserts a *Pierce* claim for common law wrongful termination under *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505, 512 (1980). (Compl. ¶¶ 65-70.) Plaintiff

---

[13] Although the Court chooses to briefly discuss Plaintiff's remaining NJLAD claim and *Pierce* claim below, the Court notes that "[a] district court may [choose to] decline supplemental jurisdiction if it 'has dismissed all claims over which it has original jurisdiction.'" 28 U.S.C. § 1367(c)(3); *see also McCreary v. Redev. Auth. of City of Erie*, 427 F. App'x 211, 216 (3d Cir. 2011) (finding that once the district court "dismissed the federal claims, leaving only the state-law claims, 'the prerequisites for § 1367(c)(3) were met.'" (citing *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 174 (3d Cir. 2009))).

alleges that she was discharged in retaliation for making complaints about alleged unlawful racial discrimination and Human Resources procedures. (*Id.* at 68.) Defendants move to dismiss Plaintiff's *Pierce* claim for failure to identify any clear mandate of public policy. (Defs.' Moving Br. 22.) Defendants assert that even if such a mandate is identified, Plaintiff cannot support that such a policy was violated or that she sufficiently expressed more than just her "vague concerns." (*Id.*)

Where a plaintiff bases her common law *Pierce* claim on the public policy of the NJLAD and asserts a claim under both, the former claim is subsumed by the latter. *See, e.g.*, *Campbell v. Sedgwick, Detert, Moran & Arnold*, No. 11-642, 2011 WL 5248150, at *3 (D.N.J. Nov. 2, 2011) (citation omitted); *Rodriguez v. Springhill Suites by Marriott*, No. 13-6841, 2014 WL 575529, at *2 (D.N.J. Feb. 10, 2014) ("New Jersey courts and courts interpreting New Jersey law have held that common law claims for wrongful discharge in violation of public policy are preempted when a statutory remedy under the NJLAD exists." (quoting *Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 567 (D.N.J. 2000))); N.J.S.A. § 10:5-13(b) ("All remedies available in common law tort actions shall be available to prevailing plaintiffs [under the NJLAD]."). The only exception to when a *Pierce* claim is not preempted as coterminous with the NJLAD is if the cause of action finds its basis in the New Jersey State Constitution. *Campbell*, 2011 WL 5248150, at *3. Here, Plaintiff does not cite or refer to the New Jersey State Constitution; thus Plaintiff's *Pierce* claim is coterminous with her NJLAD claim and must be dismissed. *See Schanzer v. Rutgers Univ.*, 934 F. Supp. 669, 679 (D.N.J. 1996) (dismissing plaintiff's *Pierce* claim because the "NJLAD provides the full panoply of rights and remedies that are available under the common law."); *Santiago*, 107 F. Supp. 2d at 568 (dismissing plaintiff's common law *Pierce* claims because they "are duplicative of the cause of action under the NJLAD and therefore are preempted by the statute."); *see also*

*Rodriguez*, 2014 WL 575529, at *2 ("To the extent [p]laintiff may allege that the NJLAD supplies the clear mandate of public policy, a common law claim for wrongful discharge cannot be predicated on the policy expressed through the NJLAD in light of the statutory remedy available.").

For the reasons stated above, Plaintiff's *Pierce* claim against Galaxy is dismissed without prejudice.

## IV.    CONCLUSION

For the reasons stated above, Counts One, Three, and Four against Genesis are dismissed with prejudice; Count Two against Defendants is dismissed with prejudice; and Counts One, Three, and Four against Galaxy are dismissed without prejudice. The Court will issue an Order consistent with this Memorandum Opinion.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

24