<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| LESLIE VIDAL,<br><br>      Plaintiff,<br><br>    v.<br><br>GALAXY 2439 ENTERPRISES, LLC,<br><br>      Defendant. | Civil Action No. 23-1845 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**<u>SHIPP, District Judge</u>**

This matter comes before the Court on Defendant Galaxy 2439 Enterprises, LLC's ("Defendant") Motion to Dismiss (ECF No. 14) Plaintiff Leslie Vidal's ("Plaintiff") Amended Complaint (ECF No. 12). Plaintiff opposed the Motion (ECF No. 16) and Defendant replied (ECF No. 17). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Local Civil Rule 78.1(b). For the reasons set forth below, the Court grants in part and denies in part Defendant's Motion.

**I. <u>BACKGROUND</u>[1]**

  **A. Factual Background**

On or about February 22, 2021, Plaintiff was hired by Defendant as a part-time Human Resources ("HR") Consultant tasked with supporting an internal review of HR practices. (First Am. Compl. ¶¶ 8-9, ECF No. 12.) Around May 2021, Defendant promoted Plaintiff to a full-time

---

[1] In considering the instant motion, the Court accepts all factual allegations in the Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

"[HR] & Business Development Manager." (*Id.* ¶ 11.) During her employment with Defendant, Plaintiff "continuously raised concerns, objections, and complaints to her supervisors" pertaining to employment practices she believed were unlawful and discriminatory. (*Id.* ¶ 13.) Specifically, Plaintiff identified and reported concerns including: (1) failure to follow standardized hiring practices (*id.* ¶ 15);[2] (2) disparate treatment of non-white job applicants in hiring (*id.* ¶¶ 16-17);[3] (3) inconsistencies in disciplinary and performance-related processes that varied depending on an employee's racial background (*see id.* ¶¶ 18-20, 26); and (4) failure to reflect overtime payment for non-exempt employees (*id.* ¶ 24). When Plaintiff made Senior HR staff members aware of these concerns, they failed to address them. (*Id.* ¶¶ 13, 17, 20-21, 23, 25, 27-28.)

On or about June 28, 2021, Defendant hosted a job fair to recruit employees for various positions. (*Id.* ¶¶ 29-30.) Plaintiff, as the HR and Business Development Manager, "was tasked with . . . attempting to match each candidate with an open position matching their skills and

---

[2] Plaintiff avers that:

> Defendant['s] hiring practices were not following standardized procedures with regard to the interviewing and hiring of candidates, such as Defendant's recruitment team completing and placing signatures on employment applications rather than the applicant doing so, employment applications lacking necessary disclosures, [HR] representatives conducting unauthorized background checks, and candidates who disclosed medical and/or health conditions or need for reasonable accommodation were being declined employment.

(First Am. Compl. ¶ 15.)

Plaintiff "also complained in writing, and during meetings with her managers of an another [sic] illegal hiring practice, specifically, that the Defendant was requesting medical and health information on applications." (*Id.* ¶ 21.)

[3] Plaintiff "specifically identified during her audit of the Defendant's hiring practices that non-white applicants for positions with Defendant were being refused interview opportunities despite having sufficient qualifications identified in the application for the positions." (*Id.* ¶ 16.)

experience." (*Id.* ¶ 31.) Based on the request of a senior executive of Defendant (the "Executive") "that Plaintiff direct all candidates [with hospitality experience] to her job station first," Plaintiff led "a Black male job fair attendee . . . who indicated that he had experience in the hospitality industry" toward the Executive. (*Id.* ¶¶ 32-33.) As Plaintiff approached the Executive with the Black male attendee (the "Candidate"), the Executive "began to make a shooing gesture toward Plaintiff stating "'[n]o, I am not going to interview him,' or words to that effect." (*Id.* ¶ 34.) The following day, the Candidate contacted Plaintiff and "advised that he believed he had been discriminated against" by the Executive. (*Id.* ¶ 35.)

Plaintiff informed several HR colleagues about the Executive's conduct during the job fair. (*Id.* ¶ 36.) In particular, she advised HR colleagues in writing that "she witnessed discriminatory conduct" and reported the Candidate's complaint "that Defendant was racist in its failure to consider him for a position." (*Id.*) Those colleagues informed Plaintiff of "other allegations of racist conduct by [the Executive] but excused her behavior [on the basis of her] not being an HR expert." (*Id.* ¶ 37.) Plaintiff was also informed that the Executive and Defendant's CEO had been engaged in a romantic relationship "for years." (*Id.* ¶ 39.)

On or about June 30, 2021, Defendant's HR Director and Chief Legal Officer called Plaintiff into a meeting. (*Id.* ¶¶ 23, 42.) There, Plaintiff reiterated her concerns and observations, including the Executive's conduct, the Candidate's discrimination allegation, and the hiring and payroll practices she observed. (*Id.* ¶ 44.) By the end of that day, Plaintiff was called into another meeting during which she was terminated "for 'poor performance,' for 'not meeting goals set for the job fair' and [because her allegations] 'did not line up.'" (*Id.* ¶ 45.)

3

### B.     Procedural History

On June 24, 2022, Plaintiff filed a complaint in New Jersey Superior Court against Defendant, a subsidiary of Defendant, and several of Defendant's employees alleging the same general facts that Plaintiff pleads here.[4] (*See generally* N.J. Super. Ct. Compl. *20-41, Ex. B., ECF No. 5-2.)[5] The Superior Court entered an order dismissing with prejudice one claim against Defendant. (Oct. 27, 2022 N.J. Super. Ct. Consent Order *45-46, Ex. C, ECF No. 5-2.)

On April 4, 2023, Plaintiff first filed a complaint (the "Complaint") in this Court against Defendant and its subsidiary. (Compl., ECF No. 1.) That Complaint levied allegations against Defendant and its subsidiary for: (1) retaliation under 42 U.S.C. § 1981 (*id.* ¶¶ 47-54); (2) violation of New Jersey's Conscientious Employee Protection Act ("CEPA") (*id.* ¶¶ 55-64); (3) wrongful termination in violation of New Jersey public policy (*id.* ¶¶ 65-70); and (4) violation of New Jersey's Law Against Discrimination (the "NJLAD") (*Id.* ¶¶ 71-79). Upon Defendant's motion to dismiss (Def.'s Mot. Dismiss, ECF No. 5), the Court issued a Memorandum Opinion granting the motion. (Dec. 6, 2023 D.N.J. Mem. Op. ("Mem. Op."), ECF No. 10).

In its prior Memorandum Opinion, this Court dismissed with prejudice all claims against Defendant's subsidiary. (*Id.* at 7-11.) The CEPA claim against Defendant was also dismissed with prejudice because the statute of limitations on the claim expired. (*Id.* at 15.) This Court then fully evaluated, but ultimately dismissed, Plaintiff's remaining claims with leave to amend. (*Id*. at 24.)

---

[4] Specifically, Plaintiff asserted three claims: retaliation under New Jersey's Conscientious Employee Protection Act ("CEPA"), retaliation under the New Jersey Law Against Discrimination ("NJLAD"), and associational discrimination and wrongful discharge under NJLAD. (*See* Super. Ct. Compl. *32-36.)

[5] Page numbers preceded by an asterisk refer to the enumeration in the ECF header.

On January 5, 2024, Plaintiff timely filed an Amended Complaint against Defendant. (ECF No. 12.) Defendant then filed a motion to dismiss the Amended Complaint. (ECF. No. 14.) Plaintiff opposed the Motion (ECF No. 16-1), and Defendant replied (ECF No. 17). The Court now decides whether the Amended Complaint meets the pleading requirements.

## II.     LEGAL STANDARD

Rule 8(a)(2)[6] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "Although we must accept the allegations in the complaint as true, we are not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (internal quotations and citation omitted); *Iqbal*, 556 U.S. at 678 (holding that courts may ignore bare statements that "the-defendant-unlawfully-harmed-me" (citing *Twombly*, 550 U.S. at 555)). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the

---

[6] All references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

5

misconduct alleged." *Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

### III.     DISCUSSION

Plaintiff asserts three counts against Defendant. Count One of the Amended Complaint asserts a retaliation claim under 42 U.S.C. § 1981 based on Plaintiff's termination after Plaintiff raised complaints regarding "unlawful racial discrimination in the workplace." (First Am. Compl. ¶¶ 49-56.) Count Two alleges wrongful termination in violation of state public policy under *Pierce v. Ortho Pharm. Corp.*, 84 N.J. 58 (1980) (the "Pierce" claim). (*Id.* ¶¶ 57-62.) Finally, Count Three raises a retaliation claim under the NJLAD. (*Id.* ¶¶ 63-71.) Defendant argues for dismissal on all counts. (Def.'s Moving Br. 2, ECF No. 14-1.) For the reasons outlined below, Defendant's Motion is granted in part and denied in part.

#### A.     Counts One and Three — Retaliation under 42 U.S.C. § 1981 & the NJLAD[7]

Plaintiff's Counts One and Three are analyzed under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Hughes v. Novo Nordisk, Inc.*, No. 20-4991, 2024 WL 2131676, at *12 (D.N.J. May 13, 2024). To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) she engaged in a protected activity; (2) she suffered an adverse employment action by her employer; and (3) a causal connection exists between the

---

[7] Count Three of the Amended Complaint asserts a claim for violation of the NJLAD. As this Court previously noted, the elements, and therefore the analysis, required to assess the sufficiency of a claim under the NJLAD is the same as that required to assess a Section 1981 claim. (Mem. Op. 22); *Mann v. Prince Telecom, LLC*, No. 12-6263, 2013 WL 3884189, at *5 (D.N.J. July 26, 2013); *Venson v. Pro Custom Solar, LLC*, No. 19-19227, 2021 WL 49632394, at *3 (D.N.J. Oct. 25, 2021). As such, the Court's analysis under Section 1981 constitutes its analysis under the NJLAD as well.

protected activity and the adverse employment action. *See Est. of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010*)*. Once a plaintiff establishes a *prima facie* case of retaliation, the defendant assumes the burden to show that there was a legitimate nondiscriminatory reason for the adverse employment action. *Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802). Should the defendant provide a legitimate nondiscriminatory reason, the burden returns to the plaintiff to establish the reason is pretext for discrimination. *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981)).

At the pleadings stage for a § 1981 claim, a plaintiff need not establish a *prima facie* case; instead, the "plaintiff's claim must be facially plausible and give fair notice to the defendant[] of the basis of the claim." *Kelly v. HD Supply Holdings, Inc.*, No. 14-372, 2014 WL 5512251, at *4 (D.N.J. Oct. 31, 2014) (citing *Huggard v. Crown Bank*, No. 11-6194, 2012 WL 529548, at *4 (D.N.J. Feb.17, 2012)). An employment discrimination complaint must contain, "enough factual matter (taken as true) to suggest [a] *required* element [is met] . . . [and it] must [also] state enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 321-22 (3d Cir. 2008) (emphasis in original)). In sum, to survive this motion to dismiss, Plaintiff's Amended Complaint must provide facts supporting a reasonable belief that Defendant violated § 1981 through disparate treatment of employees and discrimination against job applicants. (First Am. Compl. ¶¶ 49-56); *see Wicker v. Bloomfield Disc.*, *LLC*, No. 19-19053, 2020 WL 5229388, at *3 (D.N.J. Sept. 2, 2020) (dismissing complaint where plaintiff failed to establish reasonable belief of discrimination, noting "conclusory allegations of generalized racial bias do not establish discriminatory intent").

Turning to that inquiry, § 1981 prohibits racial discrimination in the making of private and public contracts.[8] *See* 42 U.S.C. § 1981. A § 1981 claim requires a plaintiff to allege: "(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *See Est. of Oliva*, 604 F.3d at 797 (citations omitted). Section 1981 also protects "an individual (black or white) who suffers retaliation because [s]he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *Id.* at 798 (quoting *CBOCS W.,* 553 U.S. at 451). Importantly, as set forth above, Section 1981 retaliation claims require plaintiffs to allege a sufficient underlying § 1981 violation. *Id.* The Court considers the sufficiency of Plaintiff's two alleged underlying § 1981 violations, disparate treatment and the Executive's conduct, below.

   i.  *Disparate Treatment*

First, Plaintiff alleges Defendant engaged in disparate treatment of employees through Defendant's "employee discipline and performance processes." (First Am. Compl. ¶ 26.) Plaintiff contends "female employees and employees in racially protected classes were severely disciplined for infractions or performance concerns and white employees were not severely disciplined, if at all." (*Id.*) Plaintiff, additionally, alleges "disciplinary infractions such as performance deficiencies, attendance or tardiness or other conduct problems for employees were handled differently depending on race." (*Id.* ¶ 18.) Plaintiff asserts she "observed that a white employee who had a

---

[8] In portions of her amended submissions, Plaintiff again conflates a claim under Section 1981 with a claim under Title VII of the Civil Rights Act of 1964. While the "remedies available" under either statute are related and "directed to most of the same ends, [they] are separate, distinct, and independent" claims. *CBOCS W. v. Humphries*, 553 U.S. 442, 455 (2008) (quoting *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461 (1975)); *see, e.g.*, *Comcast Corp. v. Nat'l Ass'n of Afr. American-Owned Media*, 589 U.S. 327, 336-40 (2020) (distinguishing the analysis in § 1981 from the analytical toolkit employed under Title VII); (*see also* Mem. Op. 16 n.10). The Supreme Court has construed this "overlap" as "necessary" and "reflect[ive] [of] congressional design." *Id.* (citing *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 48-49 (1974)).

performance deficiency was subjected to verbal or written warning, while a black employee with a similar performance deficiency was suspended or terminated." (*Id.* ¶ 19.) Defendant contends that Plaintiff "has not stated the number or employees who were treated disparately," warranting dismissal. (Def.'s Moving Br. 14.) Defendant also contends that Plaintiff "fails to adequately describe the disparate infractions and performances concerns" and "has [] not identified the employees by name or position." (*Id.*)

To reiterate, in pleading a § 1981 retaliation claim Plaintiff need not establish a *prima facie* case of discrimination. *DiTommaso v. Med. Co.*, 754 F. Supp. 2d 702, 705 (D.N.J. 2010) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2010)). Plaintiff, instead, "need only plead facts sufficient to meet the standard of Fed. R. Civ. P. 8(a)." *Id.* (citing *Thomas v. Indep. Twp.*, 463 F.3d 285, 295 (3d Cir. 2006)). Where a plaintiff alleges racial discrimination, like here, she "must set forth facts to establish that the allegedly disparate treatment was the result of 'intentional' or 'purposeful' discrimination." *Hicks v. Arthur*, 843 F. Supp. 949, 954 (E.D. Pa. 1994) (quoting *Weldon v. Kraft*, 896 F.2d 793, 796 (3d Cir. 1990)). Section 1981's requirement of purposeful discrimination cannot be satisfied by "vague and conclusory allegations in the complaint." *Armstrong v. Sch. Dist. of Phila.*, 597 F. Supp. 1309, 1312 (E.D. Pa. 1984).

Here, Plaintiff has not plead sufficient facts to support a reasonable belief of illegal employment practices, here racial discrimination, and subsequent retaliation. In dismissing Plaintiff's first complaint, this Court noted "Plaintiff fails to list any inconsistencies in the employee discipline and performance process, the number of employees who were treated disparately, or what infractions or performance concerns were addressed with the disparately treated employees." *Vidal v. Galaxy 2439 Enters., LLC*, No. 23-1845, 2023 WL 8455255, at *9 (D.N.J. Dec. 6, 2023). While Plaintiff again charges Defendant with disparate discipline of

employees based on race, the Amended Complaint again fails to provide specific allegations of purposeful discrimination supported by specific practices, instances, or statistics. (*See, e.g.*, First Am. Compl. ¶¶ 18-19, 26.) Instead, the Amended Complaint adds that disciplinary infractions based on "performance deficiencies, attendance or tardiness, and other conduct problems were handled differently based on race," and that white and Black employees received different disciplinary outcomes. (*Id.* ¶ 18.) Crucially, however, Plaintiff does not describe the underlying conduct or specify how discipline was handled differently. (*Id.*) Plaintiff simply concludes that disciplinary disparity existed without any specific factual allegations regarding such a claim. (*See generally id.*)

Without more, a reasonable person cannot infer Defendant engaged in intentional discrimination, and Plaintiff's factual allegations do not support a reasonable expectation that discovery will result in evidence of a § 1981 violation. *See Doe v. Triangle Doughnuts, LLC*, 472 F. Supp. 3d 115, 140 (E.D. Pa. 2020) (finding at the motion to dismiss stage that a plaintiff did not establish plausible inference of racial discrimination where plaintiff pleaded only "two comments from a coworker and a third ambiguous comment [from an unnamed source]"); *Warrick v. N.J. Off. of Att'y Gen.*, No. 20-14274, 2022 WL 1763855, at *5 (D.N.J. May 31, 2022) (refusing to grant motion to dismiss because plaintiff alleged "numerous examples of, for instance, [d]efendants promoting white colleagues within four years and promoting African American employees within twenty-one years"). Accordingly, Plaintiff's disparate treatment theory fails to survive Defendant's Motion.

> ii. *The Executive's Conduct*

Plaintiff also alleges that the Executive's refusal to interview a Black applicant and Plaintiff's subsequent complaint about the Executive's behavior provide a basis for a § 1981 retaliation claim. (First Am. Compl. ¶¶ 29-36.) Defendant responds that the Amended Complaint fails to establish Plaintiff's basis for believing the Executive's refusal to interview the Candidate was motivated by the Candidate's race. (Def.'s Moving Br. 15.) Additionally, Defendant highlights that Plaintiff does not allege that the Executive said anything discriminatory, that Plaintiff does not disclose if she undertook any investigation as to whether the Executive's conduct was discriminatory, and that the Amended Complaint does not explain if Plaintiff asked the Executive why the Executive did not want to interview the Candidate. (*Id.*) Plaintiff replies that the Executive refused to interview the Candidate without knowing anything about him, except his race. (Pl.'s Reply Br. 11.)

Once more, in adequately pleading a §1981 claim, "a plaintiff must show: (1) that he [or she] belongs to a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in § 1981." *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2017) (*citing Est. of Oliva*, 604 F.3d at 797). Accepting Plaintiff's allegations as true, Plaintiff adequately alleges that the Executive refused to interview the Candidate because he was Black.

In short, two allegations combine to support a reasonable belief that the Executive engaged in racially discriminatory conduct against the Candidate. First, Plaintiff alleges, as she did in the original Complaint, that when Plaintiff directed the Candidate to the Executive at the job fair, the Executive made "a shooing gesture toward Plaintiff stating "[n]o, I am not going to interview him." (*Id.* ¶ 34.) Second, and critically, Plaintiff in the Amended Complaint now clarifies that when she

reported the Executive's alleged discrimination at the job fair to HR, an HR manager advised her that she was "aware of other allegations of racist conduct by [the Executive]." (Am. Compl. ¶ 37.) At this stage, these two allegations, taken in a light most favorable to Plaintiff, combine to support an inference of intentional discrimination under § 1981 by the Executive.

As such, Plaintiff has satisfied the elements of a § 1981 claim where she alleges that: (1) she is an individual who suffered retaliation because she tried to help a different individual, the Candidate, secure his § 1981 rights after he suffered direct racial discrimination by the Executive, *see Est. of Oliva*, 604 F.3d at 797 (citations omitted); (2) the Candidate suffered intentional discrimination by the Executive who had a prior history of racist employment-related actions; and (3) during the job fair, the Executive shooed away the Candidate, a Black man, on account of his race. Accordingly, Defendant's Motion to Dismiss Counts One and Three is denied.

      **B.**      **Count Two—*Pierce* Public Policy Claim**

Plaintiff also asserts a claim for hostile work environment and wrongful termination against Defendant under *Pierce*. (First Am. Compl. ¶¶ 58-62.) Defendant argues that Plaintiff fails to identify a public policy violated by Defendant and that Plaintiff failed to manifest "a sufficient expression of disagreement," as required under *Pierce*. (Def.'s Moving Br. 16); *see also Pierce*, 84 N.J. at 72 (requiring discharged employees to identify "a specific expression of public policy").

A *Pierce* claim is sustainable where "an employee has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Tartaglia v. UBS PaineWebber, Inc.*, 961 A.2d 1167, 1179 (N.J. 2008) (quoting *Pierce*, 84 N.J. at 72). Where a plaintiff has pled claims both under *Pierce* and the NJLAD, the *Pierce* claim is "barred because it does not seek to vindicate interests independent of those protected by the [NJ]LAD." *Bosshard v. Hackensack Univ. Med. Ctr.*, 783 A.2d 731, 738 (N.J. Super. Ct. App. Div. 2001) (citing *Catalane*

12

*v. Gilian Instrument Corp.*, 638 A.2d 1341, 1349 (N.J. Super. Ct. App. Div. 1994); *Erickson v. Marsh & McLennan Co.*, 569 A.2d 793, 804 (N.J. 1990) (reaffirming that if the NJLAD creates a remedy, "it might be unnecessary to recognize or create a *Pierce*-type action to vindicate substantially the same rights and provide similar relief"); *A.D.P. v. ExxonMobil Rsch. & Eng'g Co.*, 54 A.3d 813, 829 (N.J. Super. Ct. App. Div. 2012) (affirming dismissal of *Pierce* wrongful termination claim where plaintiff also brought action under the NJLAD); *Est. of Zoto v. Cellco P'ship*, No. 20-2307, 2023 WL 2670713, at *10 (N.J. Super. Ct. App. Div. Mar. 29, 2023) ("A *Pierce* common law wrongful discharge claim is preempted by an identical NJLAD claim."); *see also Tartaglia*, 961 A.2d at 1180 (noting New Jersey Supreme Court's endorsement of *Pierce* claims was rooted in belief that "some non-discriminatory firings [which would not give rise to suit under NJLAD] were nevertheless actionable.").

As Plaintiff's *Pierce* claim is based on the same incident as her NJLAD claim, i.e., her reports of racial discrimination and subsequent termination, it is dismissed without prejudice. (*Compare* Am. Compl. ¶¶ 57-62, *with id.* ¶¶ 63-71).

## IV.  CONCLUSION

For the reasons set forth above, the Court grants Defendant's Motion to Dismiss Count Two, but denies Defendant's Motion to Dismiss Counts One and Three on the theory outlined above.[9] (ECF No. 14.) The Court will enter an Order consistent with this Memorandum Opinion.

_____
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

---

[9] Nothing in this Memorandum Opinion forecloses Plaintiff from filing a motion to amend the complaint within the time frame set forth in an initial scheduling order.