**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| LESLIE VIDAL,<br><br>        Plaintiff,<br><br>  v.<br><br>GALAXY 2439 ENTERPRISES, LLC,<br><br>        Defendant. | Civil Action No. 23-1845 (MAS) (JBD)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court upon Defendant Galaxy 2439 Enterprises, LLC's ("Defendant") motion for summary judgment in its favor. (ECF No. 35.) Plaintiff Leslie Vidal ("Plaintiff") opposed (ECF No. 37) and Defendant replied (ECF No. 38). The Court has carefully considered the parties' submissions and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, Defendant's Motion is granted.

**I.  BACKGROUND**

  **A.  Factual Background**

  The Court recites only the uncontested facts necessary to contextualize the present motion. All other relevant or material facts in this matter are contested and will be recited where applicable in the Court's analysis.

  Plaintiff began employment with Defendant[1] in February 2021 as an at-will, part-time Human Resources Consultant to assist with the launch of a professional employer organization

---

[1] Defendant is the payroll company for an entity called Genesis Global ("Genesis"). (Def.'s Statement of Undisputed Material Facts ("DSUMF") ¶ 2, ECF No. 35-2; Pl.'s Opp'n to Def.'s Statement of Material Facts ("POSMF") ¶¶ 1-5, ECF No. 37-1.)

(the "PEO") division known as Professional Core Solutions ("ProCore"). (DSUMF ¶¶ 1, 5; POSMF ¶¶ 1-5.) During her employment with Defendant, Plaintiff reported directly to Alyssa Westfall ("Westfall"), Human Resources Director. (DSUMF ¶ 6; POSMF ¶ 6.) At some point, Plaintiff moved to a full-time position, where her main responsibility was to "successfully launch the PEO company, and to support and manage a team of two" which consisted of Ed Brienza, a salesperson, and Heather Stern, an HR generalist. (DSUMF ¶¶ 8-9; POSMF ¶¶ 8-9.) Plaintiff was responsible for organizing a job fair for ProCore that was held in June 2021, which was organized "for companies that had hired ProCore to help fill staffing needs[.]" (DSUMF ¶¶ 11-16; POSMF ¶¶ 11-16.) This was the only job fair that ProCore held, at least in part because it was deemed unsuccessful. (DSUMF ¶ 17; POSMF ¶ 17.)

A prospective candidate, Robert Winston ("Winston"), attended the ProCore job fair, and was seeking a position in housekeeping. (DSUMF ¶¶ 18-19; POSMF ¶¶ 18-21.) Two of the vendors attending the job fair, the Logan Inn and The Peacock Inn ("TPI"), initially had openings for housekeeping. (DSUMF ¶ 20; POSMF ¶¶ 19-21.) Another candidate who had housekeeping experience arrived at the job fair several hours before Winston did and interviewed with TPI. (DSUMF ¶ 21; POSMF ¶¶ 19-21.) TPI expressed interest in that candidate. (DSUMF ¶ 21; POSMF ¶¶ 19-21.) Winston interviewed for a housekeeping position with Logan Inn.[2] (DSUMF ¶ 22; POSMF ¶ 22.)

Following the job fair, Plaintiff reported that a vendor for Genesis, namely Elka Devash ("Devash"), the president of a construction company affiliated with Genesis, engaged in discriminatory conduct by failing to interview Mr. Winston and stating something like "[n]o, I'm

---

[2] During her deposition, Plaintiff could not recall if Winston interviewed with Logan Inn or TPI. (DSUMF ¶ 48; POSMF ¶ 48.)

2

not going to interview him[.]" (DSUMF ¶¶ 23-24; POSMF ¶¶ 23-24.) In an internal interview, Plaintiff further reported that Winston called shortly after the job fair, stating that he had believed he had been treated unfairly when he was waved away from the interview. (DSUMF ¶ 25; POSMF ¶ 25.)

After receiving Plaintiff's report about the alleged incident, Westfall informed Stephanie Berry ("Berry")[3], who, working together with Defendant's Chief Legal Officer Susan Kase ("Kase"), initiated a formal investigation into the alleged incident. (DSUMF ¶¶ 26-27; POSMF ¶¶ 26-27.) As part of the investigation, Berry and Kase interviewed HR managers Dena Bonfonti and Brianna Reed, who both reported that they were present at the relevant time and did not observe any discriminatory remarks or behavior by Devash. (DSUMF ¶¶ 28-29, 38; POSMF ¶¶ 28-29, 38.) Westfall also testified that she never heard of any other complaints of discrimination involving Devash. (DSUMF ¶ 53; POSMF ¶¶ 53-54.)

Berry further directed Westfall to contact Winston to obtain feedback on the job fair and confirm whether any issues arose at the job fair. (DSUMF ¶ 31; POSMF ¶ 31.) Winston reported that he had a positive experience at the job fair, raised no concerns of any discrimination, and denied any unprofessional conduct or mistreatment by any of the vendors. (DSUMF ¶ 32; POSMF ¶ 32.) Continuing in the investigation, Westfall and Kase reviewed the phone logs for Plaintiff's company phone. (DSUMF ¶ 35; POSMF ¶¶ 35-37.) The phone logs revealed a call from Winston to Plaintiff earlier on the day of the job fair, but did not reflect any incoming or outgoing phone calls between the two after Winston arrived at the job fair. (DSUMF ¶¶ 36-37; POSMF ¶¶ 35-37.) Plaintiff at her deposition, however, contended that she had a call post-job fair with Winston and

---

[3] Berry is the Chief Human Resources Officer for Defendant's parent organization, Genesis Global Group. (DSUMF ¶ 7; POSMF ¶ 7.)

3

that her call with Winston may have occurred on her personal cell phone, contrary to her representation that the call occurred on her corporate cell phone. (DSUMF ¶ 49; POSMF ¶¶ 49-51.) Plaintiff then turned over her cell phone records which did not reveal any log of a conversation between her and Winston on June 29, 2021. (DSUMF ¶ 50; POSMF ¶¶ 49-51.)

Plaintiff was terminated from her employment on June 30, 2021. (DSUMF ¶¶ 43, 51; POSMF ¶¶ 43-47 (denying allegations because they are "conclusions of law to which no response is required[,]" but not addressing the underlying fact regarding what the termination report itself states), 49-51.) Prior to her termination, Berry and Kase inquired about whether Plaintiff "had a phone call" with Winston. (DSUMF ¶ 51; POSMF ¶¶ 49-51.) Plaintiff does not know who decided to terminate her and does not know whether Devash had any role in the termination. (DSUMF ¶¶ 51, 54; POSMF ¶¶ 49-51, 53-54.) Berry denied talking to Devash about Plaintiff's termination. (DSUMF ¶ 54; POSMF ¶¶ 53-54.) Defendant's policy reserved the right to discipline or dismiss an employee for knowingly providing false information on a work-related matter, lack of good faith, or failure to observe the parameters of the position. (DSUMF ¶ 41 (citing Company Policy, Ex. H to Def.'s Mot. for Summary J. ("Ex. H"), ECF No. 35-11); POSMF ¶¶ 41-42.) Plaintiff acknowledged that giving a false statement in an investigation was a terminable offense. (DSUMF ¶ 42 (citing Pl.'s Dep. Tr., Ex. K to Def.'s Mot. for Summary J. ("Ex. K"), ECF No. 35-14); POSMF ¶¶ 41-42.)

## B.  Procedural Background

In April 2023,[4] Plaintiff filed a Complaint in this Court against Defendant and its subsidiary. (*See generally* Compl., ECF No. 1.) The original Complaint alleged claims against Defendant and its subsidiary for: (1) retaliation under 42 U.S.C. § 1981; (2) violation of New Jersey's Conscientious Employee Protection Act ("CEPA"); (3) wrongful termination in violation of New Jersey public policy; and (4) violation of New Jersey's Law Against Discrimination ("NJLAD"). (*See id.* ¶¶ 47-79.) In response to Defendant and its subsidiary's motion to dismiss (*see generally* Mot. to Dismiss Compl., ECF No. 5), the Court issued a Memorandum Opinion: (1) granting the motion; (2) dismissing with prejudice all claims against Defendant's subsidiary; (3) dismissing with prejudice the CEPA claim against Defendant; (4) dismissing without prejudice Plaintiff's remaining claims; and (5) providing Plaintiff leave to amend (*see generally* Dec. 6, 2023, Mem. Op., ECF No. 10; Dec. 6, 2023, Order, ECF No. 11). Plaintiff filed an Amended Complaint against Defendant asserting claims for: (1) retaliation under 42 U.S.C. § 1981 ("Count One"); (2) wrongful termination in violation of New Jersey public policy ("Count Two"); and (3) violation of the NJLAD ("Count Three"). (*See generally* Am. Compl., ECF No. 12.) Defendant subsequently filed a motion to dismiss the Amended Complaint (*see generally* Mot. to Dismiss Am. Compl., ECF No. 14), which the Court granted as to Count Two, but denied as to Counts One and Three (*see generally* Sep. 30, 2024, Mem. Op.; Sep. 30, 2024, Order, ECF No. 19).

---

[4] Prior to initiating this action, Plaintiff filed a complaint in the New Jersey Superior Court against Defendant, a subsidiary of Defendant, and several of Defendant's employees alleging similar claims to those initially brought in the present action. (*See* Sep. 30, 2024, Mem. Op. 4, ECF No. 18 (citation omitted).) The Superior Court entered an order dismissing with prejudice one claim against Defendant. (*See id.* (citation omitted).)

5

On November 7, 2025, Defendant filed the present motion for summary judgment. (*See generally* Mot. for Summary J., ECF No. 35.) Plaintiff opposed (*see generally* Pl.'s Opp'n Br., ECF No. 37-2), and Defendant replied (*see generally* Def.'s Reply Br., ECF No. 38).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56(a)[5] provides that summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). A material fact raises a genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248). In deciding a summary judgment motion, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

Once the moving party has met its threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 247-48; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which the nonmoving party must rely to support its assertion that genuine disputes of material fact exist). If the non-moving party fails to come forward with the requisite showing to establish "the existence

---

[5] Any reference to "Rule" or "Rules" hereinafter refers to the Federal Rules of Civil Procedure.

of an element essential to that party's case, and on which that party will bear the burden of proof at trial[,]" then "there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the non[-]moving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 249-50. Credibility determinations are the province of the fact finder. *See Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## III. DISCUSSION

Defendant moves for summary judgment, primarily arguing that both of Plaintiff's remaining retaliation claims pursuant to 42 U.S.C. § 1981 and the NJLAD fail as a matter of law. (*See generally* Def.'s Moving Br., ECF No. 35-1.) Specifically, Defendant argues that the "undisputed record forecloses" Plaintiff's only remaining theory that Defendant terminated Plaintiff in retaliation for reporting supposedly discriminating conduct.[6] (*Id.* at 1.) Plaintiff opposes, arguing that "there is a genuine issue of material fact as to whether the Defendant was

---

[6] The Court previously dismissed Plaintiff's disparate treatment theory for its retaliation claims, and so the only remaining theory for Plaintiff's surviving claims rests on the theory that "the [e]xecutive [Devash] refused to interview a Black applicant[, Winston,] and Plaintiff's subsequent complaint about the [e]xecutive's behavior provide a basis for a § 1981 retaliation claim." (Sep. 30, 2024, Mem. Op. 8-12; *see also* Def.'s Moving Br. 5 (noting Plaintiff's sole remaining retaliation theory).)

7

motivated to terminate [Plaintiff's] employment by her making her complaint" or if Plaintiff was terminated for a legitimate, non-retaliatory reason. (Pl.'s Opp'n Br. *1.)[7]

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . to the full and equal benefit of all laws . . . as is enjoyed by white citizens . . . ." 42 U.S.C. § 1981. "[S]ection 1981 also encompasses 'the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights.'" *Est. of Olivia ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (quoting *CBOCS W., Inc. v. Humphries*, 533 U.S. 442, 452 (2008)). "In a retaliation case[,] a plaintiff must demonstrate that there had been an underlying [S]ection 1981 violation." *Id.* (citation omitted). Retaliation claims are subject to the *McDonnell Douglas* burden-shifting framework which first requires the plaintiff to establish a prima facie case of the elements of retaliation. *Hughes v. Novo Nordisk, Inc.*, No. 20-4991, 2024 WL 2131676, at *12 (D.N.J. May 13, 2024) (first citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); and then citing *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017)).

To establish a prima facie case of retaliation under both § 1981 and the NJLAD, a plaintiff must demonstrate that: "(1) [s]he engaged in protected activity[;] (2) [her] employer took an adverse employment action against [her;] and (3) there was a causal connection between [her] participation in the protected activity and the adverse employment action."[8] *Est. of Olivia*, 604 F.3d at 798 (citing *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)); *see also Mann*

---

[7] Page numbers preceded by an asterisk refer to the page numbers noted in the ECF header.

[8] The substantive elements of these claims are "generally identical" to Title VII claims as well. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181-82 (3d Cir. 2009).

*v. Prince Telecom, LLC*, No. 12-6263, 2013 WL 3884189, at *3-4 (D.N.J. July 26, 2013) (noting same prima facie elements for § 1981 and NJLAD retaliation claims).

    A.    **Protected Activity**

"For purposes of the first prong of a prima facie case of retaliation, protected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer[,] but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir. 2006)). Such an opposition must be as "to discrimination based on a protected category, such as age or race." *Id.* (citation omitted). "The employee must have an 'objectively reasonable' belief that the activity [she] opposes constitutes unlawful discrimination . . . . To put it differently, if no reasonable person could have believed that the underlying incident complained about constituted unlawful discrimination, then the complaint is not protected." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (quoting *Moore*, 461 F.3d at 340-41) (discussing retaliation in the context of Title VII).

Here, the undisputed material facts show that Plaintiff has not engaged in a protected activity. Plaintiff claims that she engaged in a protected activity "given her making a complaint of race discrimination . . . arising out of Defendant's representative shooing away a Black job candidate from a job fair organized by [Plaintiff]." (Pl.'s Opp'n Br. *3.) As the undisputed facts

show, however: (1) Devash is *not* a representative or employee of Defendant[9], but rather the president of a company affiliated with Genesis Hospitality (DSUMF ¶ 23; POSMF ¶¶ 23-24); (2) Devash has no known history of other discriminatory conduct[10] (DSUMF ¶ 53; POSMF ¶¶ 53-54); (3) eye witnesses reported that they did not observe any discriminatory conduct during the job fair (DSUMF ¶ 29; POSMF ¶ 29); and (4) Winston himself, the purported subject of the discriminatory behavior, reported a positive experience at the job fair (DSUMF ¶ 32; POSMF ¶ 32). The Court has scoured the record and simply cannot find evidence which could lead a jury to properly find that Plaintiff's report was based on an objectively reasonable belief that a single, purported incident of Devash "shooing" away Winston and making a statement that they are not hiring after TPI had already expressed interest in a prior candidate was unlawful discrimination. *See, e.g.*, *Cuevas v. Camden Iron & Metal, Inc.*, No. 23-20830, 2025 WL 2490544, at *7 (D.N.J. Aug. 29, 2025) (finding no evidence that plaintiff held an "objectively reasonable belief" where plaintiff made complaints of purportedly "unfair treatment"); *Daniels v. Sch. Dist. of Phila.*, 982 F. Supp. 2d 462, 483 (E.D. Pa. 2013) ("It would strain the imagination to find that [the indirect and innocuous] complaint was made with an objectively reasonable belief by [plaintiff] that [defendant's employee's] comment was unlawful." (citation omitted)), *aff'd*, 776 F.3d 181 (3d Cir.

---

[9] The fact that Devash is not an employee or representative of Defendant, and therefore any complaint of Devash's conduct is not one related to *Defendant* or *Defendant's* employment practices is, by itself, enough to find that Plaintiff's retaliation claim must fail. *See Daniels*, 776 F.3d at 193 (noting that "protected 'opposition' activity includes not only an employee's filing of formal charges of discrimination *against an employer*[,] but also 'informal protests of discriminatory employment practices*, including making complaints to management" (emphasis added) (citation omitted)).

[10] In its Memorandum Opinion addressing Defendant's motion to dismiss the Amended Complaint, the Court found "other allegations of racist conduct by [Devash]" to be "critical[]" in Plaintiff's Amended Complaint surviving the motion to dismiss. (Sep. 30, 2024, Mem. Op., 11-12.) Notably, no such facts have been identified by Plaintiff in opposition to this Motion, and Plaintiff even admitted that Westfall testified that she is not aware of any history of discriminatory conduct by Devash. (*See* DSUMF ¶ 53; POSMF ¶¶ 53-54.)

2015); *Gist v. Burlington Coat Factory Warehouse Co.*, No. 13-1094, 2014 WL 4105015, at *4 (D.N.J. Aug. 19, 2014) ("As the Supreme Court reiterated in *Breeden*, '[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to [discrimination].'" (alterations in original) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001)).

Because Plaintiff cannot satisfy the first element required for her retaliation claim under both § 1981 and the NJLAD, Defendant's motion for summary judgment must be granted.

**B.   Causation**

Even assuming Plaintiff's complaint constituted protected activity, Plaintiff fails to evidence that her termination was causally connected to her report. Plaintiff argues that "the temporal proximity of her complaint to the termination of her employment" is sufficient to meet the causation element, or there exists a genuine dispute of material fact regarding whether Plaintiff's termination was motivated by the making of her complaint. (Pl.'s Opp'n Br. *5-7.) As Defendant points out, however, because the record clearly demonstrates that Plaintiff's termination was not a result of her report, but rather her conduct involved in the ensuing investigation undertaken by Berry and Kase, Plaintiff cannot satisfy the causation element. (*See* Def.'s Moving Br. 10-11.) During the investigation, Berry determined that Plaintiff made false claims in violation of company policies. (*See* DSUMF ¶¶ 39, 41-42; POSMF ¶¶ 39-42.)[11] Plaintiff admits that she was questioned about whether she made a phone call to Winston prior to her termination. (*See*

---

[11] Plaintiff summarily denies that "[b]ased on the investigation into Plaintiff's representations and based on . . . Westfall's report of her call with . . . Winston and based on the phone records, . . . Berry determined that Plaintiff's report was unfounded and untrue." (DSUMF ¶ 39; POSMF ¶¶ 39-40.) Because the Court finds that Plaintiff did not meet her burden in furnishing evidence to substantiate the factual basis on which her denial of the fact is founded, the Court deems it admitted. *See* Local Civ. R. 56.1(a).

DSUMF ¶ 51; POSMF ¶¶ 49-51.) Plaintiff also admits that the phone records for both her personal phone and company phone showed that a call did not take place. (*See* DSUMF ¶¶ 35, 37, 50; POSMF ¶¶ 35-37, 49-51.) The contemporaneous termination summary maintained by Defendant in Plaintiff's employment file even states the reason for termination was falsification of her report. (*See* DSUMF ¶ 46 (quoting Termination Summary, Ex. J. to Def.'s Mot. for Summary J., ECF No. 35-13); POSMF ¶¶ 43-47 (denying allegations because they are "conclusions of law to which no response is required[,]" but not addressing the underlying fact regarding what the termination report itself states)); Local Civ. R. 56.1(a).

Given the record before the Court, intervening circumstances exist such that any inference of retaliation based on temporal proximity is dispelled and Plaintiff has not otherwise met her burden for establishing causation. *See, e.g.*, *Houston v. Dialysis Clinic, Inc.*, No. 13-4461, 2015 WL 3935104, at *11 (D.N.J. June 26, 2015) (noting that "there was an intervening event that must be taken into consideration in determining whether the temporal proximity raised by [p]laintiff is suggestive of pretext" and even so, "[e]ven if the intervening event had not occurred, [p]laintiff cannot rely solely on temporal proximity to show pretext"); *see also Carvalho-Grevious v. Del. State Univ.*, 851 F.3d 249, 260 (3d Cir. 2017) (rejecting plaintiff's argument that the "temporal proximity between the HR meeting and the termination notice is unusually suggestive of retaliatory motive" and noting that "temporal proximity merely provides an evidentiary basis from which an inference [of causation] can be drawn" (alteration in original) (citation omitted)); *Joseph v. N.J. Transit Rail Ops., Inc.*, No. 12-1600, 2013 WL 5676690, at *11 (D.N.J. Oct. 17, 2013) ("Although the Court does not dispute that the timing of an employee's termination may be suggestive of retaliation when accounting for the totality of the facts in the record, the temporal proximity

12

between a protected act and a termination of employment is not, alone, prima facie evidence of retaliation.").

Plaintiff, therefore, also fails to establish the prima facie element of causation, as is required for her retaliation claim.[12]

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted. The Court will issue an Order consistent with this Memorandum Opinion.

Dated: February 3rd, 2026

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[12] The Court need not address Defendant's remaining arguments regarding whether Plaintiff satisfies the burden-shifting framework.

13